**Charles RIDGEWAY, et al., Plaintiffs,**

v.

**UNION COUNTY COMMISSIONERS, Defendant.**

No. C2–86–1080.

United States District Court, S.D. Ohio, E.D.

June 7, 1991.

Matthew Phillip Cincione, Columbus, Ohio, for plaintiffs.

Robert Louis Berry, Columbus, Ohio, for defendant.

## OPINION AND ORDER

GEORGE C. SMITH, District Judge.

Presently before this Court are cross motions by plaintiffs, Charles and Brian Ridgeway and defendants, Union County Commissioners, Union County Sheriff John G. Overly and Deputy David Roberson, Deputy Grote and Deputy Elmore, for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. Plaintiffs commenced this action alleging deprivation of

their rights under the First, Fourth and Fourteenth Amendments to the United States Constitution. This action is being brought pursuant to 42 U.S.C. Sec. 1983 and under the First, Fourth and Fourteenth Amendment of the United States Constitution. The jurisdiction of this Court over the claims arising under 42 U.S.C. Sec.1983 is founded on 28 U.S.C. Sec. 1343(3) and (4). The jurisdiction of the Court over the claims arising under the First, Fourth and Fourteenth Amendments is founded on 28 U.S.C. 1331 and 1343(3). The jurisdiction of this Court over the claims arising under the common law of the State of Ohio is founded on the pendent claim jurisdiction of this Court.

### FACTS

On or about September 19, 1985, at approximately 11:00 a.m., defendants Elmore, Grote and Roberson were involved in an investigation of illegal drug activity and cultivation in Union County, Ohio. Based upon information from informants that one or more of the plaintiffs were cultivating marijuana, the plaintiffs' premises was one of the areas under investigation.

Defendants Roberson, Grote and Elmore received a radio message from the pilot of a police helicopter that a marijuana plant had been spotted growing thirty to forty yards from the plaintiffs' house, next to a barn located at the end of the driveway of plaintiffs' premises. Upon receipt of said message from the helicopter, a radio dispatcher of the Union County Sheriff's Department telephoned the Ridgeway residence and, without identifying himself, told the person who answered the telephone that the police were on the way and that he had "better get his plants."

Plaintiff Brian Ridgeway, after hanging up the phone, exited the house, and proceeded in the direction of the marijuana plant. He then saw the helicopter and retreated back to the house. The officers in the helicopter advised the officers on the ground of this information, along with a physical description of Brian Ridgeway.

Defendants Elmore, Grote and Roberson proceeded to the Ridgeway residence upon receipt of the dispatch. When they arrived, Grote and Elmore proceeded to the area of the marijuana plant to collect evidence. Roberson went to the house, knocked on the door, identified himself and asked to be let inside. After several failed attempts at requested entry, Defendants Roberson, Elmore and Grote entered the house, without a search warrant or an arrest warrant, through an unlocked door with their sidearms drawn.

Defendant Grote found Brian Ridgeway and arrested him. Defendants Elmore and Roberson searched the rest of the house for their safety to determine if anyone else was present. Plaintiff John Ridgeway, Brian Ridgeway's brother was found in the house as a result of the search. Plaintiff Brian Ridgeway was then transported to the Juvenile Detention Center and was released to his parents at approximately 6:00 p.m.

It was determined that prosecution was not warranted due to the fact that Brian Ridgeway had not, at the time of arrest, reached the age of majority and because only one marijuana plant had been found. Therefore, no criminal charges were formally filed against plaintiff Brian Ridgeway.

Plaintiffs claim that defendants violated 42 U.S.C. Sec. 1983, and the First, Fourth and Fourteenth Amendments to the United States Constitution. As a proximate result of such violations, Plaintiffs claim to have suffered emotional distress and damage. Plaintiffs have asked the Court for compensatory relief and punitive damages. Both plaintiffs and defendants have filed cross motions for summary judgment.

### STANDARD OF REVIEW

In considering this motion, the Court is mindful that the standard for summary judgment "mirrors the standard for a directed verdict under [Rule 50(a)], which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) citing *Brady v. Southern Ry. Co.,*

320 U.S. 476, 479–480, 64 S.Ct. 232, 234–235, 88 L.Ed. 239 (1943). Thus, the Supreme Court concluded in *Anderson* that a judge considering a motion for summary judgment must "ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair minded jury could return a verdict for the plaintiff on the evidence presented." 477 U.S. at 252, 106 S.Ct. at 2512.

■ Rule 56(c) of the Federal Rules of Civil Procedure provides in pertinent part:
The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.
In essence, the inquiry is whether the evidence presented a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512.

■ Such an inquiry necessarily implicates the evidentiary standard of proof that would apply at the trial on the merits. As a result, the Court must view the evidence presented through the prism of the substantive evidentiary burden. Rule 56(e) therefore requires that the nonmoving party go beyond the pleadings and by their own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Id.* at 322, 106 S.Ct. at 2552.

In *Banks v. Rockwell International N. Am. Aircraft Operations*, 666 F.Supp. 1053 (S.D.Ohio 1987) (J. Graham), this district enunciated the importance of granting summary judgments in appropriate situations by stating that: "Although summary judgment should be cautiously invoked, it is an integral part of the Federal Rules which are designed to secure the just, speedy and inexpensive determination of every action." *Citing, Celotex Corp. v. Catrett*, 477 U.S. at 324, 106 S.Ct. at 2553 (quoting Fed.R.Civ.P. 1) *Anderson*, 477 U.S. at 252, 106 S.Ct. at 2512.

■ Thus, the mere existence of a scintilla of evidence in support of a plaintiff's claim is insufficient—there must be evidence upon which a jury could reasonably find for the plaintiff. Having discussed the Rule 56 standard of review, the Court now turns to the merits.

## LAW AND ANALYSIS

Plaintiffs in this case are seeking civil damages against Defendants Union County Commissioners, Union County Sheriff John G. Overly and Deputies Roberson, Grote and Elmore.

## I. UNION COUNTY COMMISSIONERS

Plaintiffs base their allegations against Defendant Union County Commissioners on the grounds that the Union County Commissioners are responsible for the funding of the Union County Sheriff's Department and for the administration of the Union County government. Plaintiffs, therefore, seek to have the Commissioners held liable under the theory of respondeat superior.

The common law doctrine of respondeat superior as a basis for liability pursuant to 42 U.S.C. Sec. 1983 has been rejected by the Supreme Court in *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). The Sixth Circuit Court of Appeals has likewise addressed the topic in *Jones v. City of Memphis*, 586 F.2d 622 (6th Cir.1978). Specifically, the Supreme Court in *Monell* stated:
By our decision in *Rizzo v. Good*, 423 U.S. 362 [96 S.Ct. 598, 46 L.Ed.2d 561] (1976), we would appear to have decided that the mere right to control without any control or direction having been ex-

ercised and without failure to supervise is not enough to support Sec. 1983 liability. *See* 423 U.S., at 370–371 [96 S.Ct. at 604].

*Id.* 436 U.S. at 694, 98 S.Ct. at 2037.

■ The law is clear that, in actions brought pursuant to 42 U.S.C. Sec. 1983 and in direct actions brought under the Constitution, the liability of supervisory personnel and government entities must be based on more than merely the right to control. As such, since the Union County Commissioners are a government entity and plaintiffs have based their claim against the Union County Commissioners solely on the official responsibilities stated above, the plaintiffs have failed to state a federal claim against which relief can be granted.

■ Plaintiffs have also failed in their pendant state law claim against the Union County Commissioners because it is the Sheriff, not the Commissioners, who has sole authority to appoint deputy sheriffs. (Ohio Rev. Code Sec. 311.04). Respondeat superior is therefore not a viable theory of liability because the Commissioners are not charged with the responsibility over the Defendant Deputies. Thus, Plaintiffs' claims under 42 U.S.C. Sec. 1983 against the Union County Commissioners, as a matter of law, is DENIED.

## II. UNION COUNTY SHERIFF JOHN G. OVERLY

■ Defendant Union County Sheriff John G. Overly also cannot be held liable under the plaintiffs' claim of liability through the theory of respondeat superior. As seen in *Monell,* respondeat superior alone is not a basis for liability under 42 U.S.C. Sec. 1983. Therefore, plaintiffs' federal claim against Defendant Sheriff cannot stand.

As a matter of law the plaintiffs' pendant state claims against Defendant Sheriff are also DENIED. Ohio Revised Code Sec. 311.05 states:

The sheriff shall only be responsible for the neglect of duty or misconduct in office of any of his deputies if he orders, has prior knowledge of, participates in,

acts in reckless disregard of, or ratifies the neglect of duty or misconduct in office of the deputy.

■ There is nothing in the stipulated facts before the Court that would indicate any direct involvement by the Defendant Sheriff. Plaintiffs have not brought forth affidavits or interrogatories establishing any sort of direction by the Sheriff in this incident. As such, none of the prerequisites to liability have been established or even alleged by the Plaintiffs. As a matter of law, the complaints against Defendant Union County Sheriff John G. Overly is DENIED and DISMISSED.

## III. DEPUTIES GROTE, ROBERSON AND ELMORE

The Court must now turn to issue of whether or not the defendants, Grote, Roberson and Elmore, deprived the plaintiffs of their rights under the First, Fourth and Fourteenth Amendments to the United States Constitution so as to be liable pursuant to 42 U.S.C. Sec. 1983.

The Supreme Court held in the case of *Payton v. New York:*

The Fourth Amendment, made applicable to the States by the Fourteenth Amendment, prohibits the police from making a warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest.

445 U.S. 573, 583–603, 100 S.Ct. 1371, 1378–1388, 63 L.Ed.2d 639 (1980). In *Payton,* the Supreme Court further stated:

In terms that apply equally to seizures of property and to seizures of persons, the Fourth Amendment has drawn a firm line at the entrance to the house. Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant.

*Id.* at 590, 100 S.Ct. at 1382. Therefore, absent exigent circumstances, the Supreme Court has determined warrantless home arrests to be unconstitutional.

■ Plaintiffs' warrantless arrest in the privacy of their own home cannot be justified on the basis of the "hot pursuit" doctrine, since there was no immediate or

continuous pursuit of Brian Ridgeway from the scene of a crime. *See Welsh v. Wisconsin,* 466 U.S. 740, 753, 104 S.Ct. 2091, 2099, 80 L.Ed.2d 732 (1984). Plaintiff Brian Ridgeway was already in his own home before the defendant deputies were dispatched. Defendant deputies were not responding to an emergency in which speed was essential to protect a compelling governmental interest. *See United States v. Morgan,* 743 F.2d 1158, 1162 (6th Cir.1984), *citing Warden v. Hayden,* 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967). Defendant deputies were merely responding to a routine dispatch.

■■■ The facts do not indicate that Brian Ridgeway represented a sufficient threat to the defendant deputies, nor anyone else, to warrant a serious and demonstrable potentiality for danger. *See Morgan* at 1163, *quoting United States v. Kolodziej,* 706 F.2d 590 (5th Cir.1983). Plaintiff was in his own home and no fact has been brought forth to indicate that he demonstrated any serious threat to anyone when defendant deputies arrived.

■■■ Exigent circumstances were also not present which would result in the destruction, damaging or secretion of material evidence. *See Payton,* 445 U.S. at 579, 100 S.Ct. at 1376. Defendant deputies had collected the only vital evidence needed, namely, the marijuana plant which was growing some distance from the house.

■■■ Finally, Defendants claim that exigent circumstances involved the ability of the officers to identify and arrest the suspect. The mere ability of the plaintiff to change out of his clothes or alter his appearance is not, within the facts herein, a sufficient exigent circumstance. This Court simply is unwilling to expand the exigency exception to encompass this argument of the defendants.

■■■ · It is a basic principle of the Fourth Amendment that searches and seizures inside a home, without a warrant, are presumptively unreasonable. *Payton,* at 586, 100 S.Ct. at 1380. Therefore, entry to arrest must be afforded the same constitu-

tional protection as an entry to search. *Id.* at 588–589, 100 S.Ct. at 1381.

Nevertheless, defendants claim they relied upon Section 2935.03(B) of the Ohio Revised Code. It states in pertinent part:

> When there is reasonable ground to believe that ... a felony drug abuse offense as defined in section 2925.01 of the Revised Code, has been committed within the limits of the political subdivision, ... a sheriff, [or] deputy sheriff may arrest and detain until a warrant can be obtained any person whom he has reasonable cause to believe is guilty of the violation.

■■■ Under the Revised Code, the deputies were empowered to arrest and detain Brian Ridgeway, even without a warrant, since they had reasonable ground to believe that he had committed a felony drug offense.

■■■ The defendant deputies manner of detention was in accord with Rule 7(A) of the Ohio Rules of Juvenile Procedure. Brian Ridgeway's parents were not present to provide supervision, and the danger that he might abscond was present in light of the potential felony charges. The deputies were acting in accord with the Juvenile Rules when they transported Brian Ridgeway to the Juvenile Detention Center.

Further, Ohio Rev.Code Sec. 2935.12 states:

> When making an arrest or executing a warrant for arrest of a person charged with an offense, or a search warrant, the officer making the arrest may break down an outer or inner door or window of a dwelling house or other building, if, after notice of his intention to make such an arrest or such search, he is refused admittance ...

As stated in 26 Ohio Jurisprudence 3d, Criminal Law Sec. 485:

> The rule generally is that a peace officer may make a forcible entry to search any premises, without a search warrant, for the purpose of arresting one accused of a felony ... provided he has reasonable or just cause to believe the person he seeks to arrest is on the premises ...

*Id.* at 194. Defendants rely on these Ohio points of law and the stipulated facts that Brian Ridgeway was seen going toward the vicinity of the marijuana plant growing at the end of his driveway and returned to his house when he saw the police helicopter. These facts give rise to sufficient probable cause to believe Brian Ridgeway was guilty of the felony of drug trafficking in marijuana under Section 2925.03 of the Ohio Revised Code. Furthermore, defendant deputies were entitled to rely upon the information received by helicopter for establishing probable cause. The Supreme Court of Ohio has held that a police officer has probable grounds for arrest based upon information received over a radio. *State v. Fultz*, 13 Ohio St.2d 79, 234 N.E.2d 593 (1968). As such, with sufficient probable cause to arrest and in reliance upon Ohio Rev.Code Sections 2935.12 and 2935.-03, the defendants entered the plaintiffs' home without a warrant.

### A. Qualified Immunity

Plaintiffs claim that defendant deputies are civilly liable for violating their constitutional rights under the Fourth Amendment. The defendant deputies argue and the Supreme Court in numerous decisions has recognized the defense of qualified or "good faith" immunity for government officials from liability for civil damages. As explained in *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982):

> Decisions of this Court have established that the "good faith" defense has both an "objective" and a "subjective" aspect. The element involves a presumptive knowledge of and respect for "basic unquestioned constitutional rights." *Wood v. Strickland*, 420 U.S. 308, 322, 43 L.Ed.2d 214, 95 S.Ct. 992 [1001] (1975). The subjective component refers to "permissible intentions." Ibid. Characteristically the Court has defined these elements by identifying the circumstances in which qualified immunity would *not* be available. Referring both to the objective and the subjective elements, we have held that qualified immunity would be defeated if an official "knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff], *or* if he took the action with malicious intention to cause a deprivation of constitutional rights or other injury."

457 U.S. at 815, 102 S.Ct. at 2736–37 (emphasis in original), *quoting Wood v. Strickland*, 420 U.S. at 321–322, 95 S.Ct. at 1000–1001.

The *Harlow* Court further stated that Government officials performing discretionary functions, generally are shielded from civil damages insofar as their conduct does not clearly violate established statutory or constitutional rights of which a reasonable person should have known. *Id.* 457 U.S. at 818, 102 S.Ct. at 2738.

In determining whether the conduct of a government official is entitled to immunity from civil suit, the Supreme Court in *Harlow* devised a "test that focuses on the objective reasonableness of an official's acts." 457 U.S. at 819, 102 S.Ct. at 2739. Objective reasonableness is to be measured by reference to clearly established law. *Id.* Hence, in determining whether an official is entitled to qualified immunity, the relevant inquiry is whether the actions of the offending officials "could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1987).

It is not presently before this court to determine whether or not the Ohio Rev. Code Sections 2935.12 and 2935.03 are sufficiently narrow. While the Supreme Court in *Welsh* limited the warrantless home arrest to the investigation of serious crimes, it has not yet been firmly established just what is sufficient to be considered a "serious crime." *Id.* 466 U.S. at 752, 104 S.Ct. at 2099. The Supreme Court in *Welsh* made reference to *State v. Bennett*, 295 N.W.2d 5 (S.D.1980) which determined that distribution of controlled substances was not a grave offense to warrant the warrantless home arrest. This is merely dicta by the Supreme Court and cannot be considered sufficiently established law.

It is up to this Court to determine whether or not the defendant deputies acted objectively reasonable. Inasmuch as there is established law in Ohio upon which the deputies relied upon, the deputies acted with objective reasonableness. *Payton* clearly establishes that warrantless home searches absent "exigent" circumstances, are unconstitutional. However, Ohio law provides for the entrance and warrantless detention when the officer has reasonable grounds to believe a felony drug offense has been committed. Within these facts, the latter issue was presented. Plaintiff Ridgeway was spotted approaching the Marijuana plant after the initial telephone call. Only after he spotted the helicopter did Brian Ridgeway retreat. This gave defendant deputies reasonable ground to believe a felony had been committed. That combined with the fact that to date there exists no clearly defined Supreme Court prohibition against Ohio's type of warrantless detentions, (i.e. statutory law creating "exigent circumstances") the defendant deputies could not be said to be imputed with knowledge that their actions were unconstitutional. As such, the defendant deputies sufficiently acted objectively reasonable so to be immune from civil liability as to the plaintiffs' claims.

Defendant Deputies, Roberson, Grote and Elmore, along with the Union County Commissioners and Union County Sheriff John G. Overly are immune from liability as to the charge against them by Plaintiffs Brian and John Ridgeway. As such, defendants' motion for summary judgment is GRANTED.

## CONCLUSION

Wherefore, there being no issue of material fact, defendants are entitled to judgment as a matter of law on all of plaintiffs' claims. Accordingly, Defendants' motion for summary judgment is GRANTED. This case is DISMISSED.

IT IS SO ORDERED.