**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 14a0491n.06

**No. 12-3657**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**FILED**
Jul 07, 2014
DEBORAH S. HUNT, Clerk

DONNITA CARMICHAEL,                    )
                                       )
    Plaintiff-Appellant,               )
                                       )
v.                                     )   ON APPEAL FROM THE UNITED
                                       )   STATES DISTRICT COURT FOR THE
                                       )   NORTHERN DISTRICT OF OHIO
CITY OF CLEVELAND, ET AL.,             )
                                       )
    Defendants-Appellees.              )

Before: BOGGS and MOORE, Circuit Judges; and BARRETT, District Judge. [*]

BARRETT, District Judge. This case arises out of the murder of Tonia Carmichael by Anthony Sowell. Tonia Carmichael was one of eleven African-American women found dead in Sowell's home in Cleveland, Ohio. Plaintiff, as an individual and administratrix of Carmichael's estate, brings federal claims under 42 U.S.C. §§1981 and 1983, as well as state-law claims of negligence and wrongful death. The district court granted Defendants' Rule 12 motions to dismiss and for judgment on the pleadings, and dismissed all claims. We **AFFIRM** the dismissal of the claims.

---

[*]The Honorable Michael R. Barrett, United States District Judge for the Southern District of Ohio, sitting by designation.

**I**

**A**

The factual history which follows is based solely on the allegations in the complaint. On November 10, 2008, Tonia Carmichael disappeared. Tonia was a resident of the City of Warrensville Heights. After 48 hours, Tonia's family attempted to file a missing-persons report with the Warrensville Heights Police. An officer refused to take the report, and told the family that Tonia would show up "after she finishes smoking crack."

Because Tonia was last seen in Cleveland, Tonia's family attempted to file a missing-persons report with the Fourth District of the Cleveland Police Department. Officer Martinez refused to take the report because Tonia was not a resident of Cleveland.

The family began its own search for Tonia, and found her dark-blue Chevy S-10 pickup truck in Cleveland. The family returned to the Cleveland Police Department, but Officer Martinez still refused to take a missing-persons report.

After Tonia had been missing for three weeks, the Warrensville Heights Police took a missing-persons report.

Anthony Sowell lived at 12205 Imperial Street in Cleveland, which is just a few blocks from where Tonia's family discovered her pickup truck. In 1990, Sowell pleaded guilty to two counts of attempted rape. While Sowell requested that he be treated for his violent sexual behavior as part of his sentence, the Ohio Department of Rehabilitation and Corrections ("ODRC") failed to provide him with treatment. Sowell was released from prison in 2005. Sowell never registered as a sex offender, and was not monitored by the Cuyahoga County Sheriff's Department.

On December 8, 2008, the Cleveland police arrested Sowell after a bleeding woman ran up to a police car and told the officers that Sowell tried to punch her, choke her and rip off her clothes. The incident was assigned to Cleveland's Sex Crime Unit and investigated by Detective Georgia Hussein, Detective Kristin Rayburn, Lieutenant Michael Baumiller and Sergeant Antoinette McMahon ("the Cleveland Police Defendants"). The officers spoke to witnesses on Imperial Avenue and met with the victim, who gave a written statement and signed medical releases to allow the officers to get the records of her injuries. The officers took photographs of Sowell, which show scrapes and abrasions on his left shoulder and both legs. The officers also obtained a written statement from Sowell.

On December 10, 2008, the officers met with Cleveland Assistant Prosecutor Lorraine Coyne. The officers told Coyne that the victim had no visible signs of injuries. The officers failed to tell Coyne about Sowell's criminal history or sex-offender status. Coyne decided to release Sowell. According to Plaintiff, Cleveland employs a "straight release and indict later" policy because all criminal suspects must usually be charged within 24 to 48 hours, but resources are scarce. Plaintiff explains that the theory behind the policy is that if more information is obtained later, the case will be presented to the grand jury for a formal indictment.

Almost a year later, on October 20, 2009, a naked woman fell from a window of Sowell's home on Imperial Avenue. After obtaining a warrant, the police searched Sowell's house on October 28, 2009. The officers eventually found eleven bodies of African-American women. The bodies were hidden in crawl spaces, buried under dirt floors and buried in the back yard. Neighbors had complained about the smell of rotting flesh since 2006. A sausage company located next door to Sowell's house reported to authorities that Sowell was regularly placing

filled plastic bags wrapped with duct tape in their dumpster. Tonia's body was discovered on November 5, 2009.

In her complaint, Plaintiff sets forth six claims, albeit in a somewhat confusing manner. The third and sixth claims are not at issue on appeal.[1] The first and second claims are brought pursuant to 42 U.S.C. §§ 1981 and 1983 and name only the City of Warrensville Heights and the City of Cleveland. Plaintiff claims racial and national-origin discrimination based on the deliberate refusal to take a missing person report and promptly investigate Tonia's disappearance; and not promptly "investigating claims of missing African-Americans, while making a prompt investigations [sic] for white or Asian individuals, despite having official policies and procedures to investigate unusual or unaccountable absences."

The fourth claim is for "Negligence/Wrongful Death" and is brought against "defendants enumerated one (1) through sixteen (16) in the caption." The defendants include the City of Cleveland;[2] the City of Warrensville Heights; the Cuyahoga County Board of Commissioners; Gerald T. McFaul, the Cuyahoga County Sheriff;[3] the Cuyahoga County Sheriff's Department;

---

[1]The third claim is a claim for wrongful death under Ohio law against Segernia and Anthony Sowell. Because these defendants did not respond to the complaint, the district court dismissed these claims without prejudice. Plaintiff has not appealed their dismissal. In the sixth claim, Plaintiff seeks injunctive relief in the form of counseling and other assistance for Tonia's survivors.

[2]In her complaint, Plaintiff also named the City of Cleveland Health Department and Martin Flask, who is Cleveland's Public Safety Director. However, Plaintiff has not appealed the dismissal of these claims.

[3]Plaintiff named McFaul in her complaint, but never served McFaul with the complaint. According to a docket entry by the district court, Plaintiff voluntarily dismissed McFaul during a status conference. In its order granting Defendants' Rule 12 motions, the district court dismissed the claims against McFaul pursuant to Federal Rule of Civil Procedure 4(m). Plaintiff included

ODRC;[4] Martin Flask, Cleveland's Public Safety Director; the City of Cleveland Health Department; Segernia Sowell; Anthony Sowell; Detective McGlibra, Lieutenant Jelenick, Stephanie Prince and Sergeant Martinez ("the Warrensville Heights Police Defendants"); Georgia Hussein and Kristin Rayburn, who are two of the four Cleveland Police Defendants. Excluded from the fourth claim are Lieutenant Michael Baumiller and Antoinette McMahon, who are the two remaining Cleveland Police Defendants, and Lorraine Coyne,[5] who is an assistant prosecutor for the City of Cleveland.

Plaintiff's claim against these Defendants is based upon the failure "to prevent the actions of defendant Anthony Sowell, by allowing Anthony Sowell to be released from confinement without rehabilitative treatment" and "by being generally negligent." Plaintiff also claims that the Sheriff failed to provide notice to neighbors of a Tier III sex offender's residence as required by Ohio Revised Code § 2950.11, as amended by the Adam Walsh Act.

The fifth claim is for "Negligence/Wrongful Death" and is brought against all Defendants, although the allegations only involve three of the defendants. Plaintiff alleges that the City of Cleveland has a policy and practice that encourages the straight release of dangerous suspects. Plaintiff alleges that Cuyahoga County has a policy and procedure of "not checking on

---

McFaul on her Civil Appeal Statement, but has not specifically addressed his dismissal and has not made any arguments about the claims against him.

[4]Reginald Wilkinson, ODRC Director and Managing Officer, was not included in the caption of the complaint, but was named in the body of the complaint. In its order granting Defendants' Rule 12 motions, the district court noted that Wilkinson was not served with the complaint and therefore dismissed the claims against him pursuant to Federal Rule of Civil Procedure 4(m). Plaintiff did not include Wilkinson on her Civil Appeal Statement and has not addressed his dismissal on appeal.

[5]Coyne is incorrectly identified as Loretta in the complaint.

sex offenders and their activities." Finally, Plaintiff brings the claim against Cuyahoga County and the Sheriff for their "reckless, willful and wanton" failure to enforce "sexually oriented offender and related statutes"; for failing to create and enforce adequate policies for enforcing Ohio Revised Code § 2950.11, as amended by the Adam Walsh Act; and for failing to ensure that Sowell registered with the Sheriff's Department.

**B**

On May 1, 2012, the district court granted seven motions filed by Defendants. The Cleveland Police Defendants, Coyne, the Cuyahoga County Board of Commissioners, and the Cuyahoga County Sheriff's Department filed motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). The City of Warrensville Heights and the Warrensville Heights Police Defendants filed a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ODRC filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) based on a lack of subject-matter jurisdiction.

**II**

We review *de novo* the district court's granting of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. *Top Flight Entm't, Ltd. v. Schuette*, 729 F.3d 623, 630 (6th Cir. 2013) (citing *Courie v. Alcoa Wheel & Forged Prods.*, 577 F.3d 625, 629 (6th Cir. 2009). The same *de novo* standard of review applies to our review of the district court's granting of a motion for judgment on the pleadings under Federal Rule 12(c). *Marais v. Chase Home Fin. LLC*, 736 F.3d 711, 713 (6th Cir. 2013) (per curiam) (citing *Poplar Creek Dev. Co. v. Chesapeake*, 636 F.3d 235, 240 (6th Cir. 2011)). Likewise, we review *de novo* a district

court's dismissal of a complaint under Federal Rule 12(b)(1). *McCormick v. Miami Univ.*, 693 F.3d 654, 658 (6th Cir. 2012).

To properly state a claim, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

This court has applied these now-familiar pleading requirements outlined in *Twombly* and *Iqbal* to motions for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 611 (6th Cir. 2012). Similarly, where a challenge to subject-matter jurisdiction under Federal Rule 12(b)(1) is a "facial attack," as it is in this case, this court must take all of the allegations in the complaint as true. *Amburgey v. United States*, 733 F.3d 633, 636 (6th Cir. 2013).[6]

---

[6]Because we must accept all the allegations in the complaint as true, we reject the argument made on appeal by the City of Warrensville Heights and the City of Cleveland that this appeal should be rejected because Plaintiff's citations to the district court record are insufficient and Plaintiff has introduced new facts in her appellate brief by referring to events which occurred after the district court dismissed her claims. While Plaintiff's Corrected Brief does not provide extensive references to the record, Plaintiff cites to the district court's opinion, cites Defendants' motions and makes it clear that her statement of facts is based on the allegations in the complaint. Because our review is limited to the allegations in the complaint, any references beyond these documents are unnecessary and any "new" facts have no bearing on this Court's decision.

**III**

**A**

On appeal, one of Plaintiff's main arguments is that the district court engaged in "judicial plagiarism." Plaintiff points out that, in their motion, the City of Warrensville Heights and the Warrensville Heights Police Defendants argued:

> In this case, the Complaint is devoid of any claims that the Warrensville Heights defendants discriminated against the Plaintiff's decedent based upon her race. **Instead, the factual allegations included in the complaint indicate that, if anything, the Plaintiff's decedent was discriminated against based upon her status as a known drug user in the community.** *See* Complaint ¶14. This is insufficient to maintain a claim under 42 U.S.C. §1981, which requires an allegation of racial animus. Consequently, Plaintiff's 42 U.S.C. §1981 claim fails as a matter of law and should be dismissed with prejudice.

R. 55, p. 8 (emphasis added).

> In its opinion, the district court wrote:

> The Complaint here lacks any facts related to the alleged race discrimination. **Instead, the factual allegations indicate that, if anything, Tonia Carmichael was discriminated against based upon her status as a known drug user.** This is insufficient to maintain a claim under 42 U.S.C. § 1981, which requires an allegation of racial animus. Consequently, Plaintiff's 42 U.S.C. § 1983 claim fails as a matter of law.

R. 85, p. 21 (emphasis added). Plaintiff argues that there is no indication in the record that the district court "even read Plaintiff's Complaint." Appellant's Br. 16.

In addressing this issue, Plaintiff and Defendants both cite caselaw that stands for the proposition that a judge should exercise independent judgment. While true, most of this discussion is unnecessary and inapplicable in this case. The district court made a careful review of the complaint as evidenced by the opinion. The district court listed the defendants separately, and then explained who they were and the allegations against each one of them in detail. When

8

analyzing Plaintiff's claims, the district court filled in many of the blanks left by Plaintiff's complaint. For example, even though Plaintiff did not state which constitutional rights formed the basis of her Section 1983 claims, the district court explained that it appeared that Plaintiff was basing her claims on Tonia's rights to substantive due process and equal protection.

While there is clearly some overlap between the argument in Defendants' motion and the district court's opinion, similarity in a single paragraph of a thirty-four page opinion does not demonstrate that the district court failed to exercise independent judgment in considering Plaintiff's claims.

**B**

Plaintiff also argues that the district court misconstrued her federal claims. On appeal, Plaintiff argues that her federal claims are only brought against the City of Warrensville Heights and the City of Cleveland. Plaintiff does not address the dismissal of any federal claims brought against the other defendants. Therefore, Plaintiff has waived any argument that she has brought federal claims against any defendant other than the City of Warrensville Heights and the City of Cleveland. *Kuhn v. Washtenaw Cnty.*, 709 F.3d 612, 624 (6th Cir. 2013) ("arguments not raised in a party's opening brief, as well as arguments adverted to in only a perfunctory manner, are waived") (citing *Caudill v. Hollan*, 431 F.3d 900, 915 n.13 (6th Cir. 2005)).

At times, Plaintiff appears to collapse her federal claims into one. However, Plaintiff's claim under Section 1981 is distinct from her due-process and equal-protection claims under Section 1983.

## 1.  Section 1981

"Section 1981 prohibits racial discrimination in the making and enforcement of contracts."  *McCormick v. Miami Univ.*, 693 F.3d 654, 659 (6th Cir. 2012) (citing *Runyon v. McCrary*, 427 U.S. 160 (1976)).  Plaintiff fails to address the district court's conclusion that §1981, as amended by the Civil Rights Act of 1991, does not provide a private cause of action against governmental entities or state actors in their official or individual capacities.  *Accord Arendale v. City of Memphis*, 519 F.3d 587, 598-99 (6th Cir. 2008) ("the express cause of action for damages created by § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units."); *McCormick*, 693 F.3d at 662.  This alone would be enough to dismiss Plaintiff's §1981 claim, but as the district court explained, Plaintiff has not properly pleaded a claim against the City of Warrensville Heights and the City of Cleveland.

To state a claim under §1981, a plaintiff must show that "(1) he [or she] belongs to an identifiable class of persons who are subject to discrimination based on their race; (2) Defendants intended to discriminate against him [or her] on the basis of race; and (3) Defendants' discriminatory conduct abridged a right enumerated in section 1981(a)."  *Amini v. Oberlin College*, 440 F.3d 350, 358 (6th Cir. 2006).  However, Plaintiff has not alleged facts indicating discrimination based on race.  Instead, Plaintiff alleges in her complaint that the City of Warrensville Heights refused to take a missing-persons report because Tonia "would show up after her drugs were gone" or "will show up after she finishes smoking crack."  Plaintiff alleges that the City of Cleveland refused to take a missing-persons report because Tonia was not a resident of Cleveland.  Neither of these allegations shows an intent to discriminate on the basis

of race. Similarly, Plaintiff alleges that Cleveland improperly investigated Sowell's 2008 case and released him. However, there are no allegations that the improper investigation or Sowell's release were based on race.

Therefore, the district court properly dismissed Plaintiff's §1981 claim against the City of Warrensville Heights and the City of Cleveland.

## 2.      Section 1983

Section 1983 provides a cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" by any person acting "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory." 42 U.S.C. § 1983. The district court analyzed Plaintiff's §1983 claim as being based on violations of Tonia's substantive-due-process and equal-protection rights under the Fourteenth Amendment.

As the district court explained, the Due Process Clause "is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security." *DeShaney v. Winnebago Cnty. Dep't of Social Servs.*, 489 U.S. 189, 195 (1989). Therefore, the City of Warrensville Heights and the City of Cleveland did not have a duty to prevent Sowell, a private actor, from murdering Tonia. The district court explained that none of the limited exceptions to this general rule applied. There were no allegations to support a "special relationship" between Warrensville Heights or Cleveland and Tonia; and Warrensville Heights and Cleveland did not create a "special danger" which placed Tonia specifically at risk, as opposed to the public at large. On appeal, Plaintiff states that she never maintained that Warrensville Heights and Cleveland had a general duty to protect individuals from private acts of violence, and appears to concede that she has not stated a due-process claim.

Instead, Plaintiff clarifies that the basis of her §1983 claim is that Tonia "was selectively denied the protective services of two Defendant Cities on the basis that she was an African-American, and thus Defendants violated the Equal Protection Clause." Appellant's Br. 18.

"The Equal Protection Clause prohibits discrimination by government which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference." *TriHealth, Inc. v. Bd. of Comm'rs*, 430 F.3d 783, 788 (6th Cir. 2005). The district court concluded that the complaint did not establish that Warrensville Heights or Cleveland treated Tonia differently because she was an African American. We agree.

Plaintiff has not properly alleged that she was singled out or treated differently from other similarly situated missing persons. The complaint states that Warrensville Heights and Cleveland failed to make prompt investigations of missing African Americans and denied Tonia protective services "on the basis that she was an African-American." However, this type of unsupported, conclusory statement is not entitled to the assumption of truth. *See Iqbal*, 556 U.S. 662, 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

Plaintiff appears to put more weight into her argument that the City of Warrensville Heights and the City of Cleveland have in place a policy and practice of not making prompt investigations of missing persons when the person is African-American. While such a claim would be viable under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), merely alleging that such a policy is in place is not enough. The pleading standard under Federal Rule 8 does not require "detailed factual allegations," but it demands "more than an unadorned, the-defendant-

unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

At oral argument, counsel for Plaintiff explained that there were other cases of missing African Americans that were not investigated by Warrensville Heights or Cleveland. However, counsel admitted that these allegations were not included in the complaint.[7] Without any detailed factual allegations of this nature, Plaintiff cannot maintain her equal-protection claim. Therefore, the district court properly dismissed Plaintiff's §1983 claim against the City of Warrensville Heights and the City of Cleveland.

## C

Finally, Plaintiff argues that the district court should not have dismissed her state-law claims with prejudice. Plaintiff explains that the district court should have declined to exercise its supplemental jurisdiction and dismissed the claims without prejudice so that Plaintiff could re-file her claims in state court.[8] On appeal, Plaintiff does not make any other arguments regarding the dismissal of the state-law claims.

### 1.    Supplemental Jurisdiction

We review *de novo* a district court's determination as to whether it had supplemental jurisdiction over state-law claims. *Blakely v. United States*, 276 F.3d 853, 860 (6th Cir. 2002) (citing *Long v. Bando Mfg. of Am.*, Inc., 201 F.3d 754, 759 (6th Cir. 2000)). We review a district court's decision to exercise supplemental jurisdiction for abuse of discretion. *Harper v.*

---

[7]The district-court record shows that after Defendants filed their motions, Plaintiff was granted leave to amend her complaint, but did not do so within the requested deadline. Plaintiff requested a second extension of time to file an amended complaint, but the district court denied that request.

[8]At times, Plaintiff also argues that the district court should have remanded the claims to state court. However, Plaintiff's claims were filed in federal court at the outset.

*AutoAlliance Int'l, Inc.*, 392 F.3d 195, 200 (6th Cir. 2004) (citing *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993)). "An abuse of discretion exists only when the court has the definite and firm conviction that the district court made a clear error of judgment in its conclusion upon weighing relevant factors." *Gamel v. City of Cincinnati*, 625 F.3d 949, 951 (6th Cir. 2010) (quoting *Gaeth v. Hartford Life Ins., Co.*, 538 F.3d 524, 528-29 (6th Cir. 2008) (citation and alterations omitted)).

A district court has "supplemental jurisdiction over all other claims that are so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). However, the district court "may decline to exercise supplemental jurisdiction" if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3).

Generally, "[w]hen all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims, or remanding them to state court if the action was removed." *Musson Theatrical v. Fed. Express Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996). However, "there is no categorical rule that the pretrial dismissal of a federal claim bars a court from deciding remaining state law claims." Instead, the decision regarding the exercise of supplemental jurisdiction "depends on 'judicial economy, convenience, fairness, and comity.'" *Id.* at 1254 (quoting *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). Moreover, district courts have "broad discretion in deciding whether to exercise supplemental jurisdiction over state law claims." *Id.*

There is no question that Plaintiff's state-law tort claims are a part of the same case or controversy as Plaintiff's federal claims under 42 U.S.C. §§ 1981 and 1983. "Claims form part

14

of the same case or controversy when they 'derive from a common nucleus of operative facts.'" *Blakely*, 276 F.3d at 861 (6th Cir. 2002) (quoting *Ahearn v. Charter Township of Bloomfield*, 100 F.3d 451, 454-55 (6th Cir.1996)). Plaintiff's claims are centered on Defendants' failure to prevent and investigate Tonia's disappearance.

Defendants filed seven dispositive motions addressing both the federal and state-law claims brought against them. The briefing on some of these motions was stayed for approximately five months while the state criminal proceedings against Sowell were completed. R. 36. The district court then held oral argument on the motions. R. 84. In its opinion on the motions, the district court noted that much of the complaint was "confusing and difficult to parse." However, the district court carefully sorted through Plaintiff's six claims and determined which claims were being brought against which of the twenty-one defendants. In the interest of judicial economy, the district court properly ruled on both the federal and state-law claims. The re-filing of Plaintiff's complaint in state court would have in all likelihood meant the re-filing of Defendants' motions, which would then require a state court to repeat much of the same process. Therefore, the district court did not abuse its discretion in exercising supplemental jurisdiction over Plaintiff's state-law claims.[9]

---

[9]However, as discussed below, because the district court dismissed the claims against ODRC for lack of subject-matter jurisdiction, dismissal of the claims against ODRC should have been without prejudice.

## 2.    State law claims

While Plaintiff has not challenged the dismissal of her state law claims beyond the district court's exercise of supplemental jurisdiction, we nevertheless find that Defendants' motions were well-taken.

The district court explained that the Cuyahoga County Sheriff's Department is not *sui juris*, and therefore the claims against it should be dismissed. Plaintiff did not argue to the contrary before the district court, and even though Plaintiff has named the Sheriff's Department on appeal, she has not challenged the district court's finding.[10] However, as the district court correctly noted, federal courts have held that, under Ohio law, a county sheriff's office is not a legal entity that is capable of being sued. *Barrett v. Wallace*, 107 F. Supp. 2d 949, 954-55 (S.D. Ohio 2000) (citing *Batchik v. Summit County Sheriff's Dept.*, No. 13783, 1989 WL 26084, at *1 (Ohio Ct. App. Mar. 15, 1989)); *Petty v. Cnty. of Franklin, Ohio*, 478 F.3d 341, 347 (6th Cir. 2007) ("under Ohio law, a county sheriff's office is not a legal entity capable of being sued for purposes of § 1983."); *see also Yahnke v. Nixon*, 1:10 CV 1470, 2010 WL 3420650, *1 (N.D. Ohio Aug. 27, 2010) (collecting federal cases). Therefore, dismissal of the claims against the Cuyahoga County Sheriff's Department was proper.

The district court dismissed the claims against ODRC for lack of subject-matter jurisdiction based on immunity under the Eleventh Amendment, which provides that "[t]he

---

[10]The district court did not reach the merits of Plaintiff's claim that the Cuyahoga County Sheriff's Department failed to register Sowell as a sex offender. However, according to Plaintiff's complaint, Sowell plead guilty to two counts of attempted rape in 1990. In Ohio, the requirements of the Adam Walsh Act do not apply to offenses occurring before the enactment of the Act in 2007. *State v. Palmer*, 964 N.E.2d 406, 410 (Ohio 2012) (citing *State v. Williams*, 952 N.E.2d 1108 (Ohio 2011)).

Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any foreign state." U.S. Const. amend. XI. We have previously held that Ohio has not waived its Eleventh Amendment immunity from state-law claims for money damages against ODRC. *Turker v. Ohio Dept. of Rehab. and Corr.*, 157 F.3d 453, 456-57 (6th Cir. 1998). Therefore, the district court properly dismissed Plaintiff's claims against ODRC. However, this dismissal should not have been with prejudice. Dismissals for lack of jurisdiction based on Eleventh Amendment immunity should be made without prejudice. *Ernst v. Rising*, 427 F.3d 351, 367 (6th Cir. 2005). The judgment in this case should be amended accordingly.

The district court dismissed the state-law claims against the Cuyahoga Board of Commissioners, the City of Warrensville Heights, the Warrensville Heights Police Defendants, the City of Cleveland, and the Cleveland Police Defendants based on Ohio Revised Code §§ 2744.02 and 2744.03, which establish immunity for political subdivisions and their employees.

In Ohio, a three-tier analysis is used to determine whether a political subdivision is immune from liability. *Elston v. Howland Local Sch.*, 865 N.E.2d 845, 848 (Ohio 2007). The first tier is a general grant of immunity from liability "for injury, death, or loss to persons or property allegedly caused by an act or omission of the political subdivision or an employee of the political subdivision in connection with governmental or proprietary function." Ohio Revised Code § 2744.02(A)(1). The second tier is a determination as to whether one of the exceptions set forth in Ohio Revised Code § 2744.02(B) applies: (1) the negligent operation of a motor vehicle by an employee; (2) the negligent performance of proprietary functions; (3) the negligent failure

to keep public roads in repair and remove obstructions; (4) the negligence of employees occurring within or on the grounds of, and due to physical defects within or on the grounds of, buildings used in connection with the performance of governmental functions; or (5) where civil liability is expressly imposed by statute. However, in the third tier, immunity may be reinstated if a political subdivision can successfully assert one of the defenses listed in Ohio Revised Code § 2744.03.

In addition, Ohio Revised Code § 2744.03(A)(6) provides immunity to employees of political subdivisions unless one of the following applies: "(a) The employee's acts or omissions were manifestly outside the scope of the employee's employment or official responsibilities; (b) The employee's acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; (c) Civil liability is expressly imposed upon the employee by a section of the Revised Code . . . ."

Under the first tier of the analysis, the allegations against the Cuyahoga Board of Commissioners, the City of Warrensville Heights, the Warrensville Heights Police Defendants, the City of Cleveland, and the Cleveland Police Defendants all concern acts or omissions in connection with a governmental function. Under the statute, a "governmental function" includes "[t]he provision or nonprovision of police, fire, emergency medical, ambulance and rescue services or protection" and "[t]he enforcement or nonperformance of any law." Ohio Rev. Code § 2744.01(C)(2)(a) and (i). Plaintiff's state-law claims are based on: (1) a failure "to prevent the actions of defendant Anthony Sowell, by allowing Anthony Sewell to be released from confinement without rehabilitative treatment"; (2) the City of Cleveland's "straight release" policy; (3) Cuyahoga County's policy of "not checking on sex offenders and their activities";

(4) Cuyahoga County and the Sheriff's failure to enforce "sexually oriented offender and related statutes;" (5) Cuyahoga County and the Sheriff's failure to create and enforce adequate policies for enforcing Ohio Revised Code § 2950.11, as amended by the Adam Walsh Act; and (6) Cuyahoga County and the Sheriff's failure to ensure that Sowell registered with the Sheriff. These allegations fall within the definition of a "governmental function" under the first tier of the analysis. Because under the second tier of the analysis none of the exceptions listed in Ohio Revised Code § 2744.02(B) apply, it is unnecessary to reach the third tier of the analysis. *See Colbert v. Cleveland*, 790 N.E.2d 781, 783 (Ohio 2003).

In addition, none of the exceptions under Ohio Revised Code § 2744.03(A)(6) apply so as to impose liability on the individually named defendants. Plaintiff did not allege that the acts of the named defendants were outside the scope of their employment and official responsibilities. While Plaintiff did allege that the County and the Sheriff were "grossly negligent, reckless, willful and wanton" in the enforcement of "the sexually oriented offender and related statutes," there are no factual allegations to accompany this conclusory statement.

Therefore, the state-law claims against the Cuyahoga Board of Commissioners, the City of Warrensville Heights, the Warrensville Heights Police Defendants, the City of Cleveland, and the Cleveland Police Defendants were properly dismissed.

The claims against Coyne were based on Coyne's failure to investigate Sowell's 2008 case and her decision not to bring charges against him. Part of Plaintiff's allegations against Coyne is that the release of Sowell in 2008 was "reckless, wanton and willful." However, even if Plaintiff's allegations against Coyne fall within one of the exceptions under Ohio Revised Code § 2744.03(A)(6), Ohio Revised Code § 2744.03 provides: "an employee who

is a county prosecuting attorney, city director of law, village solicitor, or similar chief legal officer of a political subdivision, an assistant of any such person, or a judge of a court of this state is entitled to any defense or immunity available at common law or established by the Revised Code." Ohio Rev. Code § 2744.03(A)(7). At common law, prosecuting attorneys enjoyed absolute immunity when initiating a prosecution and presenting the state's case. *Willitzer v. McCloud*, 453 N.E.2d 693, 695 (Ohio 1983) (citing *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)). Accordingly, absolute immunity applies to acts such as "the professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial or before a grand jury after a decision to seek an indictment has been made." *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993). Absolute immunity also applies to the "decision to investigate or not to investigate and to present the facts discovered in a judicial proceeding, including presentment to a grand jury." *Grant v. Hollenbach*, 870 F.2d 1135, 1139 (6th Cir. 1989). These are the acts upon which Plaintiff has based her claims against Coyne, and therefore, it was proper for the district court to find that Coyne was entitled to absolute immunity and dismiss the claims against her.

## IV

The district court properly dismissed the § 1981 and § 1983 claims against the City of Warrensville Heights and the City of Cleveland. The district court also properly dismissed Plaintiff's state-law claims with prejudice, with the exception of the state law claims against ODRC. Because the district court lacked subject-matter jurisdiction, dismissal should have been without prejudice. Therefore, we AFFIRM the district court's judgment except to the extent that the dismissal of the claims against ODRC was with prejudice, which is VACATED.